Melva A. SCHALK, Plaintiff,

v.

James GALLEMORE, Defendant.

No. 88–1355–K.

United States District Court,
D. Kansas.

July 25, 1989.

James S. Phillips, Jr., Phillips & Phillips,
Wichita, Kan., for plaintiff.

James Z. Hernandez, Woodard, Blaylock,
Hernandez, Pilgreen & Roth, Wichita,
Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Melva A. Schalk brought this
action pursuant to 42 U.S.C. § 1983 for

wrongful discharge. Plaintiff alleges violation of her First Amendment right of freedom of speech based upon defendant's reliance on her memorandum of complaints in her discharge. Plaintiff additionally alleges violation of her freedom of association, and freedom to petition the government for redress of grievances. Defendant asserts that plaintiff has failed to establish violation of her First Amendment rights, and further, that the defendant is qualifiedly immune. The case is currently before the court on defendant's motion for summary judgment.

The court heard oral argument on defendant's motion on July 6, 1989. At that time the court reserved ruling on the motion. After thoroughly examining the briefs and supporting documentation filed by the parties, the court is now prepared to rule. For the reasons discussed below, the court finds defendant's motion for summary judgment should be granted.

## Findings of Fact

Plaintiff Melva Schalk was employed as a part-time patient accounts clerk by St. Luke's Hospital in Wellington, Kansas. Defendant James Gallemore was the hospital's administrator, responsible for the day-to-day operations of the hospital.

St. Luke's is a municipal hospital owned by the City of Wellington. The hospital is governed by a board of trustees. The members of the board are elected by the voters of Wellington. The agenda for board meetings was customarily prepared by the defendant. Individual board members, however, could request that certain items be put on the agenda. The board meetings were consistently open to the public. It is unclear from the record as to the policymaking powers of the board of trustees.

The hospital employee manual required job-related grievances to be resolved through the chain of command. More specifically, the employee is to file a formal complaint with the immediate supervisor, then proceed to the department head, then to an advisory committee, and finally to the administrator. The employee manual also provided immediate discipline if the employee divulged information relating to hospital business, employees, or a patient's condition, beyond that necessary for the performance of his or her duties. The record indicates that the board of trustees had no specific policy concerning employees directly contacting board members about hospital matters.

Prior to the incident in dispute, plaintiff, on two occasions, presented board members with complaints about the administration of the hospital. Plaintiff was reprimanded on one of those occasions. It is unclear, however, as to the specific subject matter of plaintiff's complaints and the reasons for her reprimand.

In November, 1985, plaintiff prepared a four-page memorandum outlining numerous complaints about the administration of the hospital. The memorandum was divided into complaints raised by fellow employees, and plaintiff's personal complaints. The memorandum, however, does not identify her fellow employees who raised the majority of the complaints.

In response to defendant's refusal to place plaintiff on the board's agenda, plaintiff delivered the memorandum to the individual members of both the board of trustees and the City Council of Wellington. It appears that plaintiff did not request any board member to place her on the agenda. Further, plaintiff wished to present the complaints outside the presence of the defendant because plaintiff was afraid of losing her job.

The first two pages of the memorandum contained a list of employee complaints which included (1) whether kitchen employees pay for their own food; (2) why a relative of a supervisor consistently comes to work late without being disciplined; (3) why defendant has not resolved problems brought to defendant's attention by fellow employees; (4) why defendant was not present during a tornado warning the previous year; and (5) why salaries have been doubled for certain employees. The other complaints ranged from why a certain amount of money is spent on teaching Lamaze classes, to why a certain employee is

allowed to leave the building to take her children to school.

The last two pages of the memorandum included plaintiff's own complaints. Those complaints include (1) why she has not received a raise; (2) why her supervisor has not told her of the location of a key to the change drawer; (3) why defendant did not intervene in a dispute between plaintiff and the supervisor of her daughter; (4) defendant's reluctance to terminate a *former* employee for alleged falsification of time sheets; and (5) long coffee breaks resulting in one customer's dissatisfaction with the collection department.

Plaintiff concludes her memorandum with direct appeals to the board members by suggesting that with board action employee morale would improve and much of the waste and inefficiency would be eliminated.

On December 4, 1985, defendant conducted an investigation of the complaints and assisted the board in formulating a response to the memorandum. The response indicated that most of the alleged problems did not exist and were based on misinformation. Additionally, the few problems which did exist were resolved by the respective departments.

On December 10, 1985, plaintiff was reprimanded by the defendant for presenting the memorandum to the board and city council members. This was due to defendant's determination that the complaints should have been processed within the hospital. Subsequent to the reprimand, plaintiff was subjected to a counseling session. During this session, plaintiff was accused of making vicious and false statements about the hospital and its employees. Plaintiff was also informed that she would face termination if she talked directly with any board members about future hospital matters.

On or about August 16, 1986, plaintiff had an informal conversation with a board member at a local grocery store. At this time, plaintiff expressed her desire to meet with the board. Plaintiff's affidavit provides that she wished to discuss a variety of complaints related to waste and inefficiency. The record is unclear as to the specifics of her new complaints.

On August 22, 1986, within hours of learning of plaintiff's conversation with the board member, plaintiff was terminated for insubordination. In his decision to terminate, defendant took into consideration plaintiff's memorandum of November, 1985. Plaintiff's termination was upheld by a grievance board and affirmed by the board of trustees.

A survey of local newspaper articles during late 1987 indicates concern among the city council members regarding the hospital's inability to pay its utility bills. The news reports are filled with numerous opinions as to the cause of the hospital's financial problems. The opinions included cutbacks in medicare payments due to low patient ratios, shorter patient stays due to long-term trends of people taking better care of themselves, and possible overstaffing.

## Discussion

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, this court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir.1988). Further, the party moving for summary judgment must demonstrate its entitlement beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). However, the moving party need not disprove plaintiff's claim, but rather, must only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical

doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1988) (quoting Fed.R.Civ.P. 56(e)). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1988).

## I. *Freedom of Speech*

Plaintiff claims violation of her freedom of speech because defendant took her memorandum of complaints into account in terminating her employment. Plaintiff asserts that the complaints touched upon broad issues of public concern. Plaintiff further contends that the hospital's interest in the effective and efficient operation of its business did not outweigh her interests in writing the memorandum.

Defendant primarily argues that her complaints did not relate to matters of public concern, but rather, related to internal personnel matters of the hospital. Defendant further contends that even if some of the complaints related to matters of public concern, plaintiff's termination was justified by the hospital's interest in ending the disruption caused by plaintiff's speech.

■ A succinct multi-step formula for analyzing a public employee's claim of free speech has been articulated in the recent case of *Melton v. City of Oklahoma City*, 879 F.2d 706, 713 (10th Cir.1989):

> First, the court must determine whether a public employee's speech touches upon a matter of public concern. *Connick [v. Myers* ], 461 U.S. 138, 103 S.Ct. 1684 [75 L.Ed.2d 708] (1983). Second, if the statement satisfies the public concern inquiry, the court must then balance the interests of the employee in making the statement against the public employer's interest in the effective and efficient fulfillment of its responsibilities to the public. *Picker-*

*ing v. Board of Educ.*, 391 U.S. 563, 568 [88 S.Ct. 1731, 1734, 20 L.Ed.2d 811] (1968). Third, assuming that both previous elements have been found in favor of the plaintiff, he or she must then prove that the protected speech "was a 'motivating factor' in the detrimental employment decision." *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287 [97 S.Ct. 568, 576, 50 L.Ed.2d 471] (1977). Fourth and finally, if plaintiff makes this showing, the burden then shifts to the employer to show by a preponderance of evidence that it would have reached the same decision in the absence of the protected activity. While, as we have already stated, the first two steps of the process involve questions of law for the court, the two-part *Mt. Healthy* analysis involves questions of fact for the jury. *Koch v. City of Hutchinson*, 847 F.2d 1436 n. 11 (10th Cir.) (en banc), *cert. denied*, —— U.S. ——, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988).

### A. Public Concern Analysis

Plaintiff contends that her complaints expressed broad issues of public concern. Specifically, plaintiff asserts that her complaints exposed wastage of money and time. In support, she points to alleged free meals to kitchen employees and salaried employees not working full days. Plaintiff reasons that the latter indicates neglect of patient care which indirectly implicates public health.

The thrust of plaintiff's arguments is that the complaints exposed the incompetency and inefficiency of the hospital administration. To this extent, plaintiff argues that the complaints are parallel to speech questioning the competency of a police force. *See McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983).

Plaintiff maintains that inefficiency was rampant throughout the hospital. In support, plaintiff points to complaints of an employee leaving the building to take her children to school, and an incident involving a former employee who allegedly falsified time sheets. Plaintiff asserts that the facts of the instant case are parallel to

those of *Rookard v. Health and Hosps. Corp.*, 710 F.2d 41 (2d Cir.1983), in which a director of nursing complained of issuance of permits to unlicensed nurses, abuses of nurses' sign-in hours, and double payment for overlapping shifts in different departments. 710 F.2d at 43–44. The *Rookard* court held that "[a]n allegation of corrupt and wasteful practices at a large municipal hospital, made to the city official empowered to investigate such charges, obviously involves a matter of public concern." 710 F.2d at 46.

Plaintiff further suggests the presence of possible fraud, corruption and nepotism, in that a relative of a supervisor was not disciplined for consistent tardiness. Additionally, plaintiff characterizes the hospital working conditions as being inequitable and adverse.

Moreover, plaintiff points to the late 1987 newspaper accounts of city council concerns about the hospital's financial condition as an indication of general public concern about the hospital. To this extent, plaintiff maintains that her primary purpose in writing the memorandum was to charge the hospital administration with waste, inefficiency and nepotism.

Defendant counters that the content of plaintiff's speech, taken as a whole, relates solely to internal personnel matters. Defendant categorizes the complaints as follows: (1) misconduct on the part of fellow employees; (2) practices and procedures at the hospital; and (3) unfair treatment of the plaintiff herself.

Defendant argues that plaintiff's claims of administrative incompetence and waste of public funds are merely plaintiff's personal opinions based strictly on rumors and misinformation. Defendant further contends that an isolated allegation of a relative of a supervisor receiving preferential treatment does not constitute a pattern of nepotism. More importantly, defendant contends that there is no indication of overt corruption or malfeasance on the part of the defendant.

Defendant suggests that plaintiff was motivated by a personal grudge, not only against the defendant but also members of his administrative team.

■ Whether a public employee's speech addresses a matter of public concern must be determined by the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). To be classified as protected speech, the subject matter of the speech should be of more than "general interest" to the public. 461 U.S. at 148 n. 8. To this extent, "[w]hat is *actually* said on that topic must itself be of public concern." *Wilson v. City of Littleton, Colo.*, 732 F.2d 765, 769 (10th Cir.1984) (emphasis added).

The Tenth Circuit has held that "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988) (citations omitted). The court should additionally consider "whether the speech *was calculated* to disclose misconduct or dealt with only personal disputes and grievances." *Id.* (emphasis in original).

In considering the content, form, and context of the plaintiff's memorandum of complaints, the court recognizes that waste of public funds and possible fraud or collusion are matters of public concern. *See, e.g., Cox v. Dardanelle Public School Dist.*, 790 F.2d 668, 672 (8th Cir.1986) (matters of public concern include misfeasance, malfeasance or improper discharging of duties); *Czurlanis v. Albanese*, 721 F.2d 98, 104 (3d Cir.1983) (practices of inefficiency, waste and fraud are matters of public concern).

■ In the instant case, a close examination of the plaintiff's memorandum reveals no complaints of malfeasance, corruption or inefficiency on the part of the defendant or his administration. Specifically, plaintiff mischaracterizes the incidents in which a certain amount of money is spent to teach Lamaze classes and the retention of a specialist as reflecting waste of public funds. These, along with instances of salary in-

creases and work schedules of salaried employees, were strictly matters of hospital personnel policies. To this extent, the majority of plaintiff's complaints dealt with matters of internal policies. It is undoubted that such complaints may take on matters of public concern in the presence of corruption, fraud, malfeasance, or in this case, lower quality of health care to the patients or the public. However, plaintiff's memorandum relates no instances in which the public's health or well-being were threatened.

Moreover, plaintiff has shown no instances of inequitable working conditions, other than her not receiving a pay raise. Additionally, the plaintiff's allegations that employee morale was low and that the board can "help with time wasted" are unsubstantiated and conclusory.

The court further recognizes that the financial problems faced by the hospital in late 1987 are of public concern. However, plaintiff's attempts to link her complaints with the local debate in late 1987 are unpersuasive. To this extent, none of the plaintiff's complaints made in November, 1985 indicate waste or inefficiency.

In examining the form of the speech, the court observes that the memorandum of complaints was based mostly on rumors and speculation. More importantly, the majority of the allegations came from the plaintiff herself and a long-time maintenance employee of the hospital. As such, there is little indication that other employees shared her views.

In light of the foregoing, the court finds the plaintiff's speech to be of a personal nature and thereby dismisses her free speech claim. Accordingly, the court does not reach the other issues presented by the parties.

## II. *Freedom of Association*

■ Although somewhat vague, plaintiff argues that her freedom of association was infringed by the defendant's directive that she not speak with members of the board of trustees about hospital matters. In so doing, plaintiff contends that defendant's order was overbroad and vague.

The defendant counters that this is not a case in which plaintiff was disciplined for her political beliefs or her personal associations. Defendant suggests that since plaintiff was disciplined for her actual speech, her claim should properly be analyzed under the free speech public employment cases and not under the freedom of association public employment cases.

The Supreme Court has recognized two forms of "freedom of association":

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.

*Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984).

In the instant case, the plaintiff has alleged no recognized form of "associational" activity. As such, plaintiff's claim of freedom of association is dismissed.

## III. *Right to Petition*

■ Plaintiff alleges violation of her right to petition the government based upon her termination for talking to a board member and writing the memorandum. Plaintiff argues that the right to petition does not require a showing of "public concern." Defendant contends that plaintiff's claim should be analyzed under the *Connick* "public concern" test, with the finding that plaintiff's complaints did not constitute matters of public concern.

It appears that neither the Supreme Court nor the Tenth Circuit has directly addressed a claim similar to plaintiff's. However, several circuits that have addressed this issue have utilized the "public concern" analysis of *Connick* in addressing a *public employee's* right to petition the government. *See Belk v. Town of Minocqua,* 858 F.2d 1258, 1261–62 (7th Cir.1988); *Day v. South Park Indep. School Dist.,* 768 F.2d 696, 701 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *Renfroe v. Kirkpatrick,* 722 F.2d 714, 715 (11th Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984).

In the absence of controlling case law, the court is persuaded by, and therefore adopts, the reasoning contained in the above cases.

In so doing, the court, as discussed *supra* at pp. 866–867, finds the plaintiff's employment-related grievances to be personal in nature and thereby not of public concern. Accordingly, plaintiff's right to petition claim is dismissed.

IT IS ACCORDINGLY ORDERED this 25th day of July, 1989, that defendant's motion for summary judgment is granted.