**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KRISTA SHANER,

    Plaintiff-Appellant,

      v.

COUNTY COMMISSIONERS OF
ADAMS COUNTY, ROBERT SACK,
and COUNTY ADMINISTRATOR, in
their official and individual capacities,

    Defendants-Appellees.

No. 96-1097
(D.C. No. 94-Z-1951)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before KELLY, McWILLIAMS, and BRISCOE, Circuit Judges.

Plaintiff Krista Shaner appeals the district court's order granting summary

judgment in favor of defendants in her 42 U.S.C. § 1983 retaliatory discharge action.  We

affirm.

Shaner was employed as a temporary administrative assistant to Margaret Papi, the

Director of Human Resources of Adams County, Colorado.  It is undisputed that Shaner

was an at-will employee who could be discharged without cause.  Robert Sack, the county

clerk and recorder, asked Shaner to verify the dates of employment of Richard Sokol.

This information was public information, and Sack was authorized to have access to

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Sokol's personnel file.  Sack offered the help of his secretary, Norma Lanning.  Although Lanning and Shaner disagree whose idea it was, Lanning took Sokol's personnel records to photocopy them.  Shaner testified in her deposition that she told Lanning she believed it was illegal to copy the file, but that Lanning replied the information was public.  Shaner did not inquire as to what portions of the file Lanning had photocopied.  Shaner was not concerned that she had personally violated any policy because Sack had given her authority to release the records to Lanning.

Shaner was governed by specific workplace policies concerning the handling of personnel files, including:

> 1.  Personnel Files may be removed by the Department Directors or by County Attorney's, Risk Management, or Equal Opportunity offices.  Personnel Files removed from the Human Resources Department are checked out by using the red "OUT" files located on top of the Personnel File cabinets.
> . . . .
> 4.  Occasionally, a request may come in from say, a law firm, asking for copies of a personnel file.  Before copying the entire file, see that the employee has signed a release (I usually double check with the County Attorney's office also) send a statement for the charges of photocopying ($.75/copy) payable to Adams County Fiscal Affairs.  Once payment is received copy and send the requested information, forward the check to Sue Bauserman in Fiscal Affairs for deposit.

Record at 101.  Shaner became concerned that the actions might have violated the policies.  The following morning, she requested that Lanning return the photocopies, stating: "I'm concerned about a certain amount of liability here, both on your part and my part:  My part for releasing the files to you; your part for photocopying them."  Record at 67.  Lanning had already given the photocopies to Sack.  Shaner then met with Papi, who had been out of the office the previous day.  Shaner told Papi, "there may be a problem here.  I have some real concerns.  I need to tell you about this to cover you and to cover me, to--to let you know what's going on here."  Record at 69.

Papi reported the incident to John Bramble, the county administrator, during a previously-scheduled meeting, and Bramble decided to dismiss Shaner. Papi apologetically dismissed Shaner and told her "dirty politics" were to blame. Papi testified in her deposition that Shaner's actions had violated standard procedures. Shaner later learned Sokol was Sack's opponent in his campaign for re-election, and that Sack had requested the information to verify representations Sokol made during the campaign.

Shaner filed her § 1983 action against Sack, the county commissioners, and Bramble, claiming she had been fired in retaliation for her complaints of alleged wrongdoing by Sack in the course of an election, in violation of her First Amendment rights. The district court granted summary judgment in favor of defendants, determining that the speech Shaner alleged resulted in her discharge did not touch a matter of public concern so as to be entitled to First Amendment protection.

A claim of retaliatory discharge by a public employer based on the exercise of First Amendment speech rights requires a four-step analysis. Bisbee v. Bey, 39 F.3d 1096, 1100 (10th Cir. 1994), cert. denied 115 S. Ct. 2577 (1995). To assert a cognizable claim, the employee must first establish the employee's speech involved a matter of public concern. Second, the interests of the employee in making the statement must outweigh the public employer's interests in efficiently fulfilling its public responsibilities. Id. These first two determinations are questions of law for the court, Johnsen v. Independent School Dist. No. 3, 891 F.2d 1485, 1489 n. 3 (10th Cir. 1989), and on appeal they are subject to de novo review with no deference to the district court, id. at 1489. Third, the employee must demonstrate the speech, if constitutionally protected, was a motivating factor in the termination decision. Bisbee, 39 F.3d at 1100. Finally, if the plaintiff

satisfies the first three steps, the burden shifts to the public employer to show the employee would have been terminated in the absence of the protected speech. Id. The last two stages of the analysis are questions of fact for the finder of fact. Conaway v. Smith, 853 F.2d 789, 795 (10th Cir. 1988). Consequently, summary judgment on either of these two elements is proper only if there is no genuine issue of material fact. Fed. R. Civ. P. 56. We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court. Bunger v. University of Oklahoma Bd. of Regents, 95 F.3d 987, 990 (10th Cir. 1996).

Protected speech touches upon a matter of public concern. Connick v. Myers, 461 U.S. 138, 146 (1983). Speech involving public concern can "be fairly considered as relating to any matter of political, social, or other concern to the community." Id. at 146. However, speech relating to internal personnel disputes is not of public concern. Whether speech relates only to personnel matters and not to the discharge of governmental responsibilities depends on the "content, form, and context of a given statement, as revealed by the whole record." Id.at 147. "In drawing the thin line between a public employee's speech which touches on matters of public concern, and speech from the same employee which only deals with personal employment matters, we have looked to the subjective intent of the speaker." Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir. 1990). For example, in Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994), cert. denied 115 S. Ct. 1357 (1995), focusing on the speaker's intent to justify his own behavior, we found an employee's comments about a sheriff department's tolerance of a sexist environment did not touch upon a matter of public concern. "The pertinent inquiry is whether the actor is speaking as a citizen or an employee." Schalk, 906 F.2d at 495.

In addition, it is not enough that the topic of the speech is of public concern--the content of the speech must be of public concern as well. <u>Withiam v. Baptist Health Care of Oklahoma</u>, 98 F.3d 581, 583 (10th Cir. 1996). "To be protected speech, the expression must 'sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government.'" <u>Id</u>. (citation omitted). "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [government] officials, in terms of content, clearly concerns matters of public import." <u>Conaway</u>, 853 F.2d at 796. However, the violation of internal policy guidelines by another governmental employee is not, in itself, a matter of public concern rather than internal interest. <u>Cf.</u> <u>Conaway</u>, 853 F.2d at 796.

Applying these standards to the present case, it is clear that Shaner's speech did not touch upon a matter of public concern and that defendants were entitled to summary judgment. Although Shaner's complaint alleged her speech related to corruption by an elected county official in his campaign for re-election, the evidence revealed that at most the speech dealt with Shaner's concern that she may have run afoul of internal departmental policy and that Lanning may have violated the spirit of the same policy. Shaner did not even know if the policy applied to Lanning. Her motive was not to reveal corruption or wrongdoing which might implicate public interests, but was purely private.

Shaner made no allegation to Papi of illegal conduct. <u>Compare</u> <u>Conaway</u>, 853 F.2d at 795. Nor did the allegation relate to public health or safety. <u>Compare</u> <u>Johnsen</u>, 891 F.2d at 1490 (school medication policy); <u>Conaway</u>, 853 F.2d at 796 (substandard electrical work). Lanning's conduct did not rise to a potential "breach of public trust on the part of a public officer." <u>Connick</u>, 461 U.S. at 148.

Moreover, the policy Shaner believed Lanning might have violated protects the privacy interests of individual employees.  Shaner knew Lanning had authorized access to the files.  She did not report an ongoing or repeated practice threatening the privacy interests of a large number of public employees.  This was a matter of purely private internal interest, not of public concern.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge