**Tyrone L. LEE, Plaintiffs,**

v.

**BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY, COLORADO, et al., Defendants.**

**Civil Action No. 95–D–682.**

United States District Court, D. Colorado.

Aug. 21, 1998.

1146

John Kokish, John Kokish, PC, Castle Rock, CO, for plaintiff.

L. Cary Unkelbach, Arapahoe County Attorney's Office, Littleton, CO, for defendants.

## ORDER ADOPTING AND AFFIRMING MAGISTRATE JUDGE'S RECOMMENDATION

DANIEL, District Judge.

Plaintiff Tyrone L. Lee ("Lee"), a former employee of Arapahoe County, Colorado, alleges violations of his civil rights under color of law in violation of 42 U.S.C. § 1983 and various state law claims. Specifically, he asserts claims of retaliation based on his speech under the First Amendment, due process violations, breach of implied contract, promissory estoppel, wrongful discharge and

for attorney fees.[1] Defendants, with the exception of James Hinkle, moved for summary judgment on March 10, 1995.[2]

Pursuant to Fed.R.Civ.P. 72, this motion was referred to Magistrate Judge Patricia A. Coan for a recommendation. She issued a recommendation on March 10, 1997, that the motion be granted in part and denied in part. Specifically, she recommends that as to Defendant Board of County Commissioners of Arapahoe County, Colorado ("BOCC"), the motion for summary judgment be denied as to Lee's First Amendment retaliation claim in connection with memoranda written by Lee in October and December 1991 and on November 11, 1993 and granted in all other respects. As to Defendant William Gibbs ("Gibbs"), Magistrate Judge Coan recommends that the summary judgment motion be denied as to the First Amendment retaliation claim in connection with a November 11, 1993 memorandum and granted in all other respects. Magistrate Judge Coan also recommends that Defendants John Nicholl, Jeannie Jolly and James Gant be given qualified immunity on Lee's retaliation claim under the First Amendment, and that they be dismissed from the case because suit against them in their official capacities is a suit against the county. Finally, Magistrate Judge Coan recommends that summary judgment be granted as to Lee's Section 1983 claim for violation of his due process rights and his state law claims for breach of implied contract and promissory estoppel.

The Recommendation advised the parties that objections to the proposed findings and Recommendation were to be filed within ten days. Lee filed an objection on March 21, 1997 and Defendants filed an objection on March 24, 1997. These timely objections necessitate a *de novo* determination as to those specified proposed findings or recommendations to which objection is made since the nature of the matter is dispositive. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1).

I first address Lee's objections to the Recommendation. Lee objects to the Magistrate Judge's treatment of the six "examples" of free speech that Lee provided in his response to the summary judgment motion in connection with his retaliation claim. Lee asserts that the Magistrate Judge improperly treated these "examples" as separate claims and that she should have denied summary judgment as to the retaliation claim in its entirety. Lee argues that the entire pattern of complaints, most of which involved the public interest, resulted in the retaliatory firing.

I do not agree with Lee's argument. As Magistrate Judge Coan correctly found, the determination of whether a public employee's speech warrants constitutional protection is a question of law for the Court to decide. *Conaway v. Smith*, 853 F.2d 789, 796 n. 8. In order to determine if Lee's claims survive summary judgment, the Court was required to examine each article of free speech that Lee claims was violated. *See,* for example, *Gardetto v. Mason*, 100 F.3d 803 (10th Cir.1996). Therefore, I find that Magistrate Judge Coan was correct in conducting an analysis of the evidence submitted in substantiation of the claim.

Lee also objects to summary judgment on his Fourteenth Amendment due process claim and the breach of implied contract and promissory estoppel claims. These claims are based on whether Arapahoe County's Policy and Procedures Manual and certain statements of supervisory personnel regarding the termination of employees created an expectation or right to continued employment. Lee argues that the Magistrate Judge's interpretation of statements such as "once a County employee, always a County employee" as vague is incorrect and that this is a jury question.

First, as the due process claim, I agree with Magistrate Judge Coan that the evidence presented by Lee fails to show a property interest in continued employment with the County as a matter of law. Further, I agree that Lee's state law claims of breach of contract and promissory estoppel fail as a

---

1. Plaintiff withdrew his claim for wrongful discharge in his response to the summary judgment motion.

2. Since Defendant Hinkle was not included in the summary judgment motion, purportedly due to his doctor's advice, neither the Recommendation or this Order addresses his liability.

matter of law. The County's Policy and Procedures Manual provides explicitly that employment is at will and that the County has the right to immediately dismiss an employee. *See* Defendant's Exhibit M, pp. 40–41, 45. Further, the introduction to the Manual states that it is not intended to be a contract (*id.,* p. 2) and Lee signed statements acknowledging his understanding that the policies in the Manual were not contractual in nature. Moreover, as Magistrate Judge Coan found, Lee has not claimed that he was aware of or relied on any official statements that the County treated the procedures in the Manual as mandatory or that the County treated its employees as something other than employees at will.

■ Finally, as to the statements "once a County employee, always a County employee" and that the County "does not treat its employees as employees at will", Magistrate Judge Coan correctly found that these are vague assurances which do not create an implied contract. *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1464–65 (10th Cir.1994). Even if they were sufficiently definite so as to state a claim, Lee failed to present evidence that these statements were made to him or that he relied on these statements in his employment with the County.

In the alternative, Lee argues that it was premature to decide this issue without discovery having yet been commenced.[3] I reject this argument since Lee failed to show how such discovery would change the outcome of the summary judgment motion as required pursuant to Fed.R.Civ.P. 56(f).[4]

■ Turning to Defendants' objections to the Recommendation, Defendants object to the recommendation that summary judgment on the retaliation claim under the First Amendment be denied as to Defendants BOCC and Gibbs. I first address Defendants' contention that Lee's November 1993 memo addressed to Gibbs was not a matter of public concern so as to state a claim under the First Amendment. Defendants argue

that (i) Lee fails to specifically identify just what the safety problem is at issue in the memo so as to implicate a matter of public concern, (ii) Lee wrote the memo to his supervisor versus the general public or media, thus showing that the memo is not of public concern; and (iii) the context or motive of the memo was related to Lee's private grievance with his employer rather than a matter of public concern.

I agree with Magistrate Judge Coan that this memo constituted a matter of public concern, rather than merely a private matter. First, I disagree with Defendants that the memo fails to specifically identify what the safety problem is. The memo addresses safety issues involved with maintenance of road surface and removal of snow in the intersection without exposing a grader and operator to high speed traffic. It references that "[b]ecause of the size and weight of heavy equipment, any accident with a motorist could possibly be a fatality and all safety measures should be utilized." I think that this sufficiently touches on a matter of public concern so as to come within the rubric of the First Amendment.

Further, although Lee may have written this memo during a period that he was in conflict with his supervisors, "the mere fact that [the plaintiff's] statements related to a general grievance he had with [his supervisors] does not transform the statements into a matter solely of internal significance." *Moore v. City of Wynnewood,* 57 F.3d 924, 932 (10th Cir.1995). Instead, courts look at whether the point of the speech was to bring wrongdoing, inefficiency or malfeasance to light, or whether it was merely to further some purely private interest related to the employment dispute. *See Gardetto,* 100 F.3d at 812; *Koch v. City of Hutchinson,* 847 F.2d 1436 (10th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). Here, the memo was primarily related to disclosure of wrongdoing or inefficiency on the part of the County in connection with its mainte-

---

**3.** Discovery was stayed in this case based on Defendants' assertion of the qualified immunity defense.

**4.** I have reviewed the remainder of the Magistrate Judge's recommendations regarding dismissal of certain of Plaintiff's claims, to which no objections were filed. I agree with and adopt those recommendations.

nance of road surfaces and snow removal rather than with Lee's ongoing disputes with his supervisors. It also did not further any purely private interest of Lee. Courts have typically held that such speech is a matter of public concern. *Koch*, 847 F.2d at 1445–46 and n. 17.

■ Finally, although "statements made during the course of an employee's official duties weigh against a conclusion that they are matters of public concern", nonetheless, the "content, form and context of [Lee's memo] indicate he was commenting on a matter of public importance." *Erickson v. Bd. of County Commr's*, 801 F.Supp. 414, 421 (D.Colo.1992). "Private communications on matters of public interest are entitled to First Amendment protection; an employee need not remonstrate publicly to bring his comments under the aegis of the First Amendment." *Gardetto*, 100 F.3d at 815.

■ Defendants also argue that even if the memo is an issue of public concern, the claim should be dismissed on another basis—that Lee has failed to present any evidence of a causal connection between the memo and his dismissal. Thus, Defendants argue that Magistrate Judge Coan's finding of a material issue of fact on this issue is in error. Further, Defendants argue that the Complaint does not allege that the November 1993 memo was a motivating factor in Lee's dismissal.

■ I agree with the Magistrate Judge that a causal connection can be established when the constitutionally protected activity is followed closely by adverse action. *Smith v. Maschner*, 899 F.2d 940, 948–49 (10th Cir. 1990). In this case, the November 11, 1993 memo was followed closely by a memo dated November 30, 1993 from Gibbs complaining of Lee's insubordinate conduct. Lee was then dismissed approximately two and a half months after the memo. I agree with Magistrate Judge Coan that there is a genuine issue of material fact on this issue. I further note that the Tenth Circuit has held that the

causal connection element is generally a factual issue which precludes summary judgment. *See Gardetto*, 100 F.3d 803, 811 (10th Cir.1996); *Schalk v. Gallemore*, 906 F.2d 491, 497 (10th Cir.1990).[5]

Next, Defendants argue that the Magistrate Judge incorrectly recommended denial of qualified immunity to Defendant Gibbs. Defendants assert that Magistrate Judge Coan's basis for denying Gibbs qualified immunity is her finding that the "short time period" between the November 11, 1993 memo and termination (about two and one-half months) raises a genuine issue of material fact as to whether the memo was a motivating factor in terminating Plaintiff's employment. Further, Defendants contend that she based her finding that the law was clearly established that Lee's memo was protected speech on *Considine v. Bd. of County Commr's*, 910 F.2d 695 (10th Cir.1990), but argue the facts of that case are clearly distinguishable from this case. Also, Defendants assert that courts have struggled to determine whether speech is protected by the First Amendment on a case-by-case basis. Lee and the Magistrate Judge have not cited cases which show, under similar circumstances, that a memo like the November, 1993 memo was protected by the First Amendment. Given the variety of alleged safety issues which have been found not to be a matter of public concern, Defendants assert that Gibbs cannot be said to have known what the clearly established law was or that the November 1993 memo was a matter of public concern.

I disagree. First, I previously agreed with Magistrate Judge Coan's recommendation that the short time period between the November 11, 1993 memo and Lee's termination raises a genuine issue of material fact as to whether the memo was a motivating factor in terminating Plaintiff's employment. As to whether the law was clearly established at the time of November 1993 memo, I find that it was. The Tenth Circuit case of *Considine*, decided well prior to the memo, clearly set forth the general standard regarding matters

5. Defendants do not object to the remainder of the Magistrate Judge's analysis under *Pickering v. Bd. of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Nonetheless, I have reviewed the Record and make an independent determination that the Magistrate Judge's recommendation on this issue is correct.

of public concern. Further, it referenced the fact that in making this determination, the inquiry is whether the speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of government officials. *Id.* at 699. I find that this case is sufficiently on point so as to alert a reasonable government official that speech such as set forth in the November 1993 memo raises issues of public concern which are protected by the First Amendment. *See also Schalk,* 906 F.2d at 494–97.

In so finding, I note that in order for a right to have been clearly established, this court requires "some, but not necessarily precise, factual correspondence" between cases predating the alleged violation and the facts in question in this case. *Calhoun v. Gaines,* 982 F.2d 1470, 1475 (10th Cir.1992). "In essence, this requires officials to know well developed legal principles and to relate and apply them to analogous factual situations." *Id.*

Finally, Defendants argue that the Magistrate Judge failed to apply the requirements of *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) in recommending that summary judgment on the First Amendment retaliation claim be denied as to the BOCC. Specifically, Defendants argue that the Magistrate Judge failed to find that there was any policy or custom of the BOCC that led to the alleged First Amendment violation, and the Complaint is devoid of any such allegations. Defendants also argue that since a claim against Gibbs in his official capacity is the same as a suit against the BOCC, the official capacity claim against Gibbs must also be dismissed.

In reviewing the Recommendation, it is true that Magistrate Judge Coan did not find a policy or custom of the BOCC. Instead, the Magistrate Judge found that a county is liable for a single unlawful decision by one of its officials who has final policy making authority under state law, and that, as happened in this case, a county may delegate its final policy making authority to a subordinate. She cites *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1129 (10th Cir.1993); and *Flana-*

*gan v. Munger,* 890 F.2d 1557, 1568 (10th Cir.1989). I agree with the Magistrate Judge. The Supreme Court in *Pembaur* made clear that in addition to the imposition of liability on a county pursuant to an official policy or custom, as found in *Monell,* a county can also be liable for a single unlawful decision by one of its officials so long as that official "possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S.Ct. 1292; *see also Sauers,* 1 F.3d at 1129. The final policymaker decision is a question of state law. *Flanagan,* 890 F.2d at 1567. In the case at hand, the commissioners allege that the BOCC delegates its authority to department heads to make hiring and firing decisions. Gibbs, as a department head, made the decision to fire Plaintiff. Thus, the County may be liable for his actions if Lee was fired in retaliation for his exercise of First Amendment rights.

I also address herein the BOCC's liability for the October and December 1991 memos. Defendants did not object to the recommendation that these memos are protected by the First Amendment. Nevertheless, I agree with the Magistrate Judge's analysis that these memos are protected by the First Amendment. Further, I agree with the Magistrate Judge that the BOCC may be liable under Section 1983 if Lee was retaliated against in connection with these memos. It is undisputed that the BOCC and/or its commissioners were provided these memos and took direct action on them in the form of an investigation. Although the BOCC can not be held liable under the doctrine of respondeat superior, it can clearly be liable for its own actions. Accordingly, summary judgment must be denied as to the BOCC.

Finally, however, I agree with the Defendants that Gibbs can not be sued in his official capacity. The Magistrate Judge did not address this issue; thus, I must address it herein. Suits against public officials in their official capacity are in reality suits against the state. Such suits are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, the

individual capacity claim against Gibbs is valid, and summary judgment is appropriately denied as to this.

For all of the reasons stated above, it is

ORDERED that the Magistrate Judge's Recommendation of March 10, 1997 is AFFIRMED AND ADOPTED, and the Arapahoe County Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART, as set forth herein. It is

FURTHER ORDERED that the hearing on pending motions currently scheduled for August 26, 1998 is VACATED. Finally, it is

ORDERED that a discovery/scheduling conference is set for October 14, 1998 at 8:30 a.m.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

This matter is before the court on the Arapahoe Defendants' Motion for Summary Judgment.[1] A Special Order of Reference under Fed.R.Civ.P. 72 referred this case to the undersigned magistrate judge on January 8, 1997 for a recommendation. The court has determined that oral argument would not materially assist it in its recommendation. For the reasons discussed below, it is recommended that the Arapahoe Defendants' Motion for Summary Judgment be granted in part and denied in part.

Plaintiff filed the instant complaint on March 27, 1995 alleging claims of violation of his First and Fourteenth Amendment Constitutional rights under 42 U.S.C. § 1983, and common law claims of breach of implied employment contract, promissory estoppel and wrongful discharge in violation of public policy.[2] On July 20, 1995, the court entered an order staying discovery against the individual defendants, and as to the state law claims, pending resolution of the instant motion for summary judgment.

### I. Background

The following facts are undisputed, or, if disputed, are resolved in plaintiff's favor on a motion for summary judgment.

Plaintiff was employed by Arapahoe County ("County") in its highways and engineering department, road and bridge section, from 1982 until January 20, 1994. Grant Affidavit, ¶ 6; Complaint, ¶ 3. Plaintiff worked as a blade operator from 1991 to 1994. Grant affidavit, ¶ 7; Complaint, ¶¶ 3, 7. In January 1991, plaintiff was assigned to operate and evaluate different brands of motor graders and to then make a recommendation to the County for the purchase of a new motor grader. Lee Affidavit, ¶ 5, and Attachment 1. Plaintiff recommended that the County purchase a Caterpillar road grader. *Id.* The County thereafter purchased a John Deere motor grader and assigned the new grader to plaintiff. Grant Affidavit, ¶ 7. Plaintiff immediately complained to defendant Grant, County road and bridge superintendent, that he was dissatisfied with the John Deere grader and that he wanted a Caterpillar road grader. Grant Affidavit, ¶ 8.

Plaintiff wrote a letter to County Commissioner Tom Eggert on October 27, 1991 expressing concern about alleged safety and financial waste issues involving the Warren/Wabash project. Defendant's Ex. C; Lee Affidavit, ¶¶ 4, 5 and Attachment 2.[3] Plaintiff sent a memo to the Board of County Commissioners ("BOCC") in December 1991 expressing similar concerns regarding the Warren/Wabash project and accusing his supervisors of waste and mismanagement. Lee Affidavit, ¶ 5 and Attachment 3. Dasel Hallmark was the County's Director of the De-

---

1. Defendant Hinkle was not included in the summary judgment motion because his doctor has advised that any contact with Mr. Hinkle regarding this lawsuit would be injurious to his health. *See* May 10, 1995 Affidavit of John D. Morrison, M.D., attached as Ex. A to Defendants' Brief in Support.

2. Plaintiff has withdrawn his claim for wrongful discharge in violation of public policy. Plaintiff's Response Brief, p. 11.

3. Plaintiff complained that a street was graded too close to sewer, gas and electrical lines posing a safety hazard for property owners and the general public.

partment of Highways and Engineering in 1991. Gibbs Affidavit, ¶ 8.

The BOCC ordered an investigation into the Warren/Wabash project. Eggert, Jolly and Nicholl Affidavits, ¶ 3. At that time the BOCC was comprised of Eggert and defendants Jolly and Nicholl. *Id.,* ¶ 1. The investigation was concluded before defendant Gibbs became acting director of the highways and engineering department on January 14, 1992. Eggert Affidavit, ¶ 3; Gibbs Affidavit, ¶ 2.

Plaintiff sent another letter voicing his concerns about the Warren/Wabash project, County personnel practices, and other matters to defendant Jolly on March 22, 1992 requesting that she, Gibbs, and County personnel director Ann Harden, meet with him to discuss his concerns. Lee Affidavit, ¶ 5 and Attachment 4.

Plaintiff met with defendant Gibbs in the Spring of 1992 to voice complaints about his supervisors. Gibbs Affidavit, ¶¶ 10, 11. Gibbs advised plaintiff to take the matter up with his supervisors and to file a grievance, if necessary. *Id.,* ¶ 12.

On February 19, 1993, plaintiff posted a letter on the employee bulletin board complaining about County bulletin board posting policies and County practices of "cronyism, favoritism and nepotism." Lee Affidavit, ¶ 5, and attachment 5.

Plaintiff sent Gibbs a memo on March 23, 1993 which contained his suggestions for more efficient gravel road maintenance. Lee Affidavit, ¶ 5 and Attachment 6. Grant discussed the proposals with Gibbs and determined that, based on his experience, plaintiff's suggestions would not work or were not an efficient use of the County's financial resources. Defendant's Reply, Second Grant Affidavit, ¶ 2.

County sign shop supervisor and road and bridge supervisor John Christenson issued plaintiff a verbal warning on April 9, 1993 for conducting "unofficial" business in the sign shop and for having a "poor attitude" towards his supervisors. Defendant's Exhibit H; Christenson Affidavit, ¶¶ 5 through 10. Mark Krumpelman and William Lewis, sign shop employees, stated that they were pres-

ent in the sign shop on April 9, 1993 when plaintiff came in to report that a county sign was down. Krumpelman Affidavit, ¶¶ 2, 4 and 6; Lewis Affidavit, ¶¶ 2, 6. Krumpelman and Lewis stated that when Christenson confronted Lee as to why he was in the sign shop, plaintiff responded in a professional manner that he was there to conduct official business. *Id.* at ¶ 6. Plaintiff left the shop immediately after making his report and did not discuss unofficial matters. *Id.*

In October 1993, defendant Gibbs was advised of a citizen's complaint that a road in Arcadia Acres had not been graded. Gibbs Affidavit, ¶ 23. Gibbs learned upon investigation into the matter that plaintiff had been assigned to grade the road October 12, 1993. *Id.* On October 12, 1993 a citizen complained that plaintiff, who was the operator in the residential area where the citizen lived, had been talking to neighbors for approximately two or three hours. *Id.*

The County received another complaint on October 21, 1993 that the Arcadia Acres road had still not been graded. Gibbs Affidavit, ¶ 24. That complaint was confirmed by a road and bridge supervisor. *Id.* Plaintiff was the grader operator responsible for the road. *Id.*

The road and bridge section vehicles are serviced by fleet services personnel. Davis Affidavit, ¶ 4. Fleet services supervisor, John Tilton, stated that plaintiff angrily confronted him on November 5, 1993 after plaintiff learned that his grader was not first in line for tire replacement. Tilton Affidavit, ¶¶ 8, 9. Tilton felt threatened and called his supervisor, Bill Davis. *Id.,* ¶¶ 9, 10. Davis then informed plaintiff that he had no authority to tell Fleet Services personnel how to do their jobs. Davis Affidavit, ¶ 9. Tilton later overheard plaintiff threaten Davis, call him a "son-of-a-bitch" and state that he would "show the County" by wrecking his grader and then blame Fleet Services for not putting tires on his grader. Tilton Affidavit, ¶¶ 13, 14. Plaintiff stated that he did not make any of the threats or statements which Tilton attributes to him. Lee Affidavit, ¶ 9. Krumpelman also stated that he was present for the discussion between Tilton and Plaintiff about the grader's tires and that plaintiff

did not make any of the threats or statements. Krumpelman Affidavit, ¶ 7.

Davis wrote defendant Gibbs about the November 5, 1993 incident involving plaintiff and requested that all future work requests by plaintiff be given to Davis' shop supervisor by plaintiff's supervisors. Davis Affidavit, ¶ 13 and attached Ex. 1.

On November 11, 1993, plaintiff sent Gibbs and other supervisors a memo regarding the County's alleged repeated failure to remedy alleged unsafe practices and conditions at the Parker Road and Old Orchard Road Intersection.[4] Plaintiff Affidavit, ¶ 5 and Attachment 7. Defendants deny that the County failed to properly remedy potential safety hazards at the Intersection. Second Grant Affidavit, ¶ 3.

Defendant Grant issued plaintiff a written reprimand on November 23, 1993 for being abusive and argumentative with Grant and stated that plaintiff seemed reluctant to cooperate with others in doing his work. Grant Affidavit, ¶ 24 and attached Ex.3. Plaintiff responded with a memo dated November 29, 1993, in which he said that Grant's account of his conversation with plaintiff and his characterization of plaintiff as argumentative and uncooperative were inaccurate. Lee Affidavit, ¶ 5 and Attachment 8.

Defendant Gibbs issued plaintiff a Notice of Unacceptable Conduct, dated November 30, 1993, concerning complaints he had received about plaintiff's disruptive, disrespectful and insubordinate conduct. Gibbs Affidavit, ¶ 29 and attached Ex. 4. Gibbs' Notice stated that plaintiff's attitude was undermining Gibbs' ability to supervise and direct the activities of the road and bridge section and was otherwise detrimental. *Id.* The Notice further stated that plaintiff had been repeatedly advised to control his "flippant, insubordinate attitude" and "volatile attitude." *Id.* Gibbs met with plaintiff on December 14, 1993 to discuss the concerns he had raised in his November 30, 1993 Notice. Gibbs Affidavit, ¶ 32. Plaintiff refused to sign the attachment to the Notice of Unacceptable Conduct

which provided that plaintiff would agree to follow County policies and procedures. *Id.*

Defendant Gibbs terminated plaintiff's employment with the County on January 20, 1994 because of plaintiff's continued disruptive and abusive behavior and his refusal to agree to abide by County policies and procedures. Gibbs Affidavit, ¶ 39. Gibbs did not consult with the BOCC or any of the defendant Commissioners prior to making the decision to discharge plaintiff, nor did the BOCC or any of the defendant Commissioners direct Gibbs to discharge plaintiff. Gibbs Affidavit, ¶ 40; Nicholl and Jolly Affidavits, ¶ 4.

From August 2, 1993 through January 18, 1994, plaintiff was directly supervised by defendant Hinkle and by other persons who are not parties to the instant action. Second Grant Affidavit, ¶ 4.

Plaintiff contended that prior to 1991 he consistently received good to excellent performance reviews from the County. Lee Affidavit, ¶ 3. Plaintiff further stated that he had always maintained a professional demeanor at work, and had never been abusive or disruptive in his actions. *Id.*, ¶ 11. Plaintiff proffered letters and affidavits from County residents, County employees and a former co-employee, and a professional colleague who stated that in their personal observations of plaintiff he was a good worker who always maintained a professional demeanor. Krumpelman Affidavit, ¶ 8; Lewis Affidavit, ¶¶ 3, 4; Bader Affidavit, ¶ 4; Lee Affidavit, ¶ 11 and Attachments 10, 11, 12, and 13.

Other employees said that they have observed plaintiff constantly criticizing his supervisors in the road and bridge section, that he disregarded authority and did whatever he wanted, that he was moody, that he had a demeaning attitude toward other employees, that he was disruptive of other employees' work, that he threatened to "get" Christenson, and that plaintiff asked, in 1993, why the County hadn't fired him, and stated that he wanted to be fired. Sanchez Affidavit, ¶ 4, 5,

---

4. Plaintiff said that the operation of snow clearing equipment at the intersection was a hazard

for the equipment operators and motorists.

6, and 7; Morgan Affidavit, ¶¶ 3, 10, and 11; and Hill Affidavit, ¶¶ 5, 6, 7 and 9.

The County promulgated Personnel Policies and Procedures which were in effect at the time of plaintiff's discharge. Harden Affidavit, ¶ 5; Personnel Policies attached to Defendants' Ex. M. Plaintiff signed acknowledgments of receipt of the County's Personnel Policies and Procedures on April 7, 1986 and December 18, 1989. Defendants' Exs. K and L.

The defendant commissioners state that neither they, nor the BOCC as a body, ever advised plaintiff that he had a right to continued employment with the County. Nicholl and Jolly Affidavits, ¶ 6.

Denise Hahl, County Manager of Administration and Planning in Support Services from 1979 until 1992, said that as a manager she was required to follow the procedures set forth in the County Personnel Policies and Procedures regarding discipline and discharge. Hahl Affidavit, ¶¶ 2, 3 and 4. She understood that the County's policies and procedures were binding on the County. *Id.,* ¶ 4. Karen Reid, former secretary for the BOCC until December 1992, said that County managers were always careful to follow the discipline and discharge procedures set forth in the Policies and Procedures Manual. Reid Affidavit, ¶¶ 3, 4. She further stated that the County attorney made the following representation: "Once a county employee, always a county employee." *Id.,* ¶ 6.

## II. Summary Judgment Standard

Summary judgment is proper under Fed. R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying the standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum,* 858 F.2d 610, 613 (10th Cir.1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury

could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied,* 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192, quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Judgment as a matter of law is improper unless the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ as to the conclusion. *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 555 (10th Cir.1996) (citation omitted). Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial. *Handy v. Price,* 996 F.2d at 1064, 1068 (10th Cir.1993).

## III. Legal Analysis

### A. *Qualified Immunity*

Defendants Nicholl, Jolly, Gibbs and Grant have asserted qualified immunity as an affirmative defense to plaintiff's 42 U.S.C. § 1983 claims against them in their individual capacities and move for summary judgment on that ground.

 The qualified immunity defense provides immunity for government officials when performing discretionary functions unless their conduct violates clearly established constitutional rights of which a reasonable person would have known. *Workman v. Jordan,* 32 F.3d 475, 478 (10th Cir.1994), citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is available to defendants who are sued in their individual, rather than official, capacities. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Plaintiff's claims against the individual defendants in their official capacities are treated as claims against the County. *Id.,citing Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (official–capacity suits "represent only another way of pleading an action against the entity of which an officer is an agent").

 Once a defendant asserts the affirmative defense of qualified immunity, the plaintiff bears the burden of coming forward

"with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Patrick v. Miller*, 953 F.2d 1240, 1243 (10th Cir.1992), quoting *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ When the defendant's state of mind is an element of plaintiff's claim, defendant must also make a prima facie showing of the "objective reasonableness" of the challenged conduct. *Lewis v. City of Fort Collins*, 903 F.2d 752, 755 (10th Cir.1990). Plaintiff must then produce specific evidence of defendant's improper motive to survive summary judgment. *Id.*, at 758.

**B.** *First Amendment Freedom of Speech Claim*

Plaintiff asserts that he was terminated in retaliation for exercising his First Amendment right to speak out on matters relating to public health, safety and welfare. Defendants contend that plaintiff was discharged for legitimate, non retaliatory reasons.

■ "[A] State may not discharge an employee on a basis that infringes upon that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *see, also, Childers v. Independent School Dist. No. 1 of Bryan County*, 676 F.2d 1338, 1342 (10th Cir.1982). To prevail on his claim that he was discharged in retaliation for exercising his constitutionally-protected right to freedom of speech, plaintiff must prove that (1) the speech is protected under the First Amendment and (2) the speech was a substantial or motivating factor in the County's decision to terminate plaintiff's employment. *Conaway v. Smith*, 853 F.2d 789, 795 (10th Cir.1988), citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Once the plaintiff meets that burden, an em-

ployer may avoid liability by showing that it would have made the same decision in the absence of the protected activity. *Childers*, 676 F.2d at 1341.

■ The court uses a two-part inquiry to determine whether a public employee's speech warrants constitutional protection: (1) whether the speech relates to matters of public concern, *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); and (2) whether the interests of the public employee in commenting on matters of public concern outweigh the interest of the government employer "in promoting the efficiency of the public services it performs through its employees," *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). If the employee's speech does not touch on a matter of public concern, the court need not engage in the *Pickering* balancing analysis. *Connick*, 461 U.S. at 146, 103 S.Ct. 1684. The determination of whether a public employee's speech warrants constitutional protection is a question of law to be resolved by the court on a motion for summary judgment. *Conaway*, 853 F.2d at 796, n. 8.

1. *"Matter of public concern" inquiry*

■ Speech touches on a matter of public concern when it can be "fairly considered as relating to any matter of political, social or other concern to the community." *Id.* Speech that is calculated to disclose inefficiency or malfeasance on the part of government officials generally constitutes a matter of public concern, while speech that pertains only to personal disputes and grievances is generally not a matter of public concern. *Koch v. Hutchinson*, 847 F.2d 1436, 1445–46 (10th Cir.1988); *Erickson v. Board of County Commissioners*, 801 F.Supp. 414, 421 (D.Colo.1992).

■ The court must consider the content, form and context of a given statement in light of the record as a whole. *Connick*, 461 U.S. at 147–148, 103 S.Ct. 1684. An important factor to be weighed in considering the form and context is whether the actor speaks as a citizen or as an employee. *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th

Cir.1990). An employee speaks as a citizen if his speech is based on the same motivation that would compel the public to speak. *Gardetto v. Mason,* 100 F.3d 803, 812 (10th Cir. 1996). The fact that the speech at issue occurred during the course of an employee's official duties may weigh against a conclusion that the statements involve matters of public concern. *Considine v. Board of County Commissioners,* 910 F.2d 695, 700 (10th Cir. 1990).

Plaintiff claims that the following written communications by plaintiff to the BOCC, individual commissioners, and County managers and supervisors relate to matters of public concern which are protected by the First Amendment: (1) February 1, 1991 letter to Dasel Hallmark regarding heavy equipment purchased by the County (Plaintiff's Ex. A, Attachment 1); (2) October 27, 1991 memo to Commissioner Tom Eggert regarding the Wabash/Warren project (*Id.,* Attachment 2); (3) December 8, 1991 memo to BOCC regarding the Wabash/Warren project (*Id.,* Attachment 3); (4) March 22, 1992 memo to Commissioner Jolly regarding County's alleged failure to remedy problems associated with Warren/Wabash project and requesting meeting with County representatives to discuss various matters (*Id.,* Attachment 4); (5) February 19, 1993 posting on the bulletin board questioning the political and policy practices of the County (*Id.,* Attachment 5); (6) March 23, 1993 memo to Gibbs suggesting improvements in gravel road maintenance (*Id.,* Attachment 6); and (7) November 11, 1993 memo to Gibbs addressing safety problems at an intersection (*Id.,* Attachment 7).

■ Plaintiff's February 1, 1991 letter to Dasel Hallmark, County engineering department, does not relate to a matter of public concern. The memo concerns the County's purchase of a John Deere, instead of a Caterpillar, motor grader and enumerates problems experienced with the John Deere since its purchase. Although plaintiff stated that he was concerned about the purchase both as a taxpayer and an employee, he was merely unhappy with the County's disregard of his choice of a different brand of grader. The record shows that the new John Deere grad-

er was assigned to plaintiff and that plaintiff immediately complained to defendant Grant about the grader because plaintiff wanted a Caterpillar.

The content, form and context of plaintiff's letter to Hallmark, which was written in the course of plaintiff's official duties, shows that plaintiff disagreed with the County's decision to purchase a John Deer grader and found many faults with that piece of equipment following its purchase and assignment to plaintiff. Plaintiff's letter to Hallmark concerns matters of personal interest to plaintiff and disputes about internal purchasing policies, not matters of public concern.

■ The majority of plaintiff's October and December 1991 written communications to the BOCC and to individual commissioners, which describe alleged financial waste, unsafe conditions and general mismanagement on the Wabash/Warren project, and which prompted an investigation by the BOCC into the project, relate to matters of public concern, despite the fact that the communications include some personal complaints by plaintiff. *Connick,* 461 U.S. at 148–49, 103 S.Ct. 1684 (where content of speech addresses both matters of public concern and personal grievances, content addressing matter of public concern may be afforded First Amendment protection). The court finds that plaintiff was speaking out as a concerned citizen in reporting his apprehension about inefficiency and malfeasance on the Warren/Wabash project to the County commissioners.

■ The court further finds that although plaintiff's March 22, 1992 memo to defendant Jolly makes passing reference to the issues he previously raised regarding the Warren/Wabash project, the primary focus of the memo is the deterioration of plaintiff's working conditions since he raised concerns about mismanagement on the project and how he was personally affected. Plaintiff's complaints about his employment situation constitute personal grievances which are not a matter of public concern. *Koch,* 847 F.2d at 1445–1446.

■ The March 22, 1992 memo requests that County commissioners and

managers meet with plaintiff to discuss "management, personnel policies, hiring practices, possible civil rights violations, equipment purchases, reevaluation of positions, and EPA violations." The requested meeting topics, excepting claims of civil rights and EPA violations, pertain to County policies and procedures and, without further elaboration, appear to be of relevance only to County employees. *Considine*, 910 F.2d at 700. Although speech on civil rights and EPA violations may constitute a matter of public concern under appropriate circumstances, to be protected speech the speaker's "expression must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Withiam v. Baptist Health Care of Oklahoma, Inc.*, 98 F.3d 581, 583 (10th Cir. 1996), citing *Wilson v. City of Littleton, Colorado*, 732 F.2d at 765, 768 (10th Cir. 1984). In the March 22, 1992 memo plaintiff did not elaborate on the specific nature of the alleged EPA and civil rights violations which he wished to address. Consequently, the court cannot find that his reference to those topics constitutes speech on a matter of public concern.

Accordingly, because the content of the March 22, 1992 memo concerns plaintiff's personal disputes as to his employment situation with the County and addresses matters of internal County policy relevant only to County employees, the memo does not relate to a matter of public concern.

 The court finds that plaintiff's March 23, 1993 memo to Bill Gibbs regarding improvements in gravel road maintenance is not a matter of public concern. Rather, plaintiff was communicating his ideas for improved gravel road maintenance, in his official capacity as a road grader, to the head of the County highways and engineering department. Although plaintiff based his suggestions on the theory that they would save taxpayer dollars and be a more efficient use of County manpower, he was speaking as a County employee within the scope of his official duties, not as a citizen voicing concerns of the general public. *Koch*, 847 F.2d at 1447.

 Plaintiff's February 19, 1993 memo to "The Bulletin Board Supervisor" denounced the County's alleged arbitrary, politically-motivated policies regarding which materials could be posted on County bulletin boards. The memo accused County officials of "cronyism, favoritism, and nepotism." Again, however, the lack of specificity in plaintiff's speech precludes a finding by the court that his February 19, 1993 memo touched on a matter of public concern. *Withiam*, 98 F.3d at 583. Further, plaintiff's complaints about the County's bulletin board policies, without further elaboration, again appear to concern the County's internal policies and practices which are relevant only to County employees and are therefore not a matter of public concern. *Considine*, 910 F.2d at 700.

Plaintiff's November 11, 1993 memo to Bill Gibbs and other supervisors addressed a safety problem at a Parker Road intersection where County road and maintenance employees had been working for approximately two years. Plaintiff's memo stated that the safety problem was improperly addressed by County supervisors and that plaintiff had taken appropriate measures to protect his own safety. The memo also expressed plaintiff's concern as a citizen about the safety of the general public and other county employees.

The court finds that plaintiff's November 11, 1993 memo, as it relates to the safety of the general public and the County's alleged failure to remedy an ongoing hazardous situation at a Parker Road intersection, touches on a matter of public concern.

### 2. *"Pickering" analysis*

 Upon finding that plaintiff's October and December 1991 memoranda to the County commissioners concerning the Warren/Wabash project, and his November 11, 1993 communication to Gibbs regarding a safety hazard at a Parker Road intersection, constitute speech on matters of public concern, the court must weigh plaintiff's interests in freedom of speech against the County's interest in efficient governmental operations. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20

L.Ed.2d 811 (1968). Factors to be considered in applying the *Pickering* balancing test include whether the statements impede the performance of the employee's regular duties or cause disruption in the regular operation of County government. *Conaway,* 853 F.2d at 797.

▮ Here, defendants do not allege that plaintiff's 1991 communications regarding the Warren/Wabash project, nor his November 1993 memo to Gibbs, caused any disruption in the operation of the road and maintenance department, or in any other County department, nor do defendants allege that plaintiff's statements interfered with the performance of his job duties. Although defendant has produced evidence of improper and disruptive behavior by plaintiff at work, defendant has produced no evidence to show that plaintiff's specific written statements regarding the Warren/Wabash project and the Parker Road intersection caused any disruption in the workplace. When a defendant fails to produce any evidence of actual disruption to government operations arising from the protected speech, plaintiff's speech is entitled to First Amendment protection. *Gardetto,* 100 F.3d at 816 (defendant's evidence regarding unrelated episodes of inappropriate conduct by plaintiff not relevant to *Pickering* balancing inquiry); *Patrick,* 953 F.2d at 1248–49.

### 3. *Defendants' Liability on First Amendment Retaliation Claim*

Whether plaintiff's protected speech regarding the Warren/Wabash project or the Parker Road intersection was a substantial or motivating factor in the decision to discharge plaintiff is a question of fact which first requires a determination of which defendants, if any, were responsible for plaintiff's termination.

▮ Individual liability under § 1983 must be premised on specific actions by a defendant which resulted in a deprivation of the plaintiff's constitutional rights. *Langley v. Adams County, Colorado,* 987 F.2d 1473, 1479 (10th Cir.1993), citing *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). If plaintiff fails to produce evidence of such actions, the individual defen-

dant is entitled to immunity from individual liability. Id.

#### a. *Liability of Gibbs*

Defendant Gibbs, head of the road and maintenance department at the time of plaintiff's termination, made the decision to terminate plaintiff's employment with the County. Gibbs Affidavit, ¶ 39. Gibbs stated that he decided to terminate plaintiff based on: repeated instances of disruptive and insubordinate behavior by plaintiff, as set forth in his November 30, 1993 memo to plaintiff; plaintiff's advisement to him in December 1993 that he had no respect for supervisory authority in the road and bridge department; and a January 5, 1994 memo from defendant Grant claiming that plaintiff had discussed alleged "waste" of County materials with a homeowner during plaintiff's regular hours of work. *Id.,* ¶¶ 22–39.

The court finds that defendant Gibbs has made a prima facie showing of the "objective reasonableness" of his decision to terminate plaintiff. *Lewis,* 903 F.2d at 755. Accordingly, plaintiff must produce specific evidence of defendant's improper retaliatory motive to show that defendant Gibbs' decision to terminate plaintiff violated plaintiff's First Amendment rights. *Id.,* at 758. Plaintiff must also show that his rights were clearly established at the time of his termination in order to defeat Gibbs' claim of qualified immunity. *Patrick,* 953 F.2d at 1243.

Plaintiff argues that Gibbs fabricated or misrepresented instances of "disruptive" or "insubordinate" conduct by plaintiff, or relied on such fabrications or misrepresentations made to him by others, as a sham justification to terminate him for speaking out about the County's wasteful financial practices and instances of general mismanagement. Plaintiff has produced affidavits from co-workers which dispute that plaintiff's behavior was disruptive or insubordinate as stated by Gibbs.

Because the court has determined that only three of plaintiff's written communications warrant First Amendment protection, the critical inquiry is whether Gibbs' decision to terminate plaintiff was motivated in whole or in part by those specific communications.

Plaintiff's other communications with, or complaints to, County officials are not relevant to the inquiry.

The record shows that Gibbs did not become the director of the highways and engineering department until January 14, 1992. It is undisputed that Gibbs did not supervise any of the road and bridge section employees prior to January 1992, was not personally involved in the Warren/Wabash project in 1991, and did not have any contact with plaintiff until the Spring of 1992. Gibbs Affidavit, ¶¶ 3, 9 and 10. Plaintiff's letters to the BOCC and individual County commissioners regarding the Warren/Wabash project were written in 1991. Plaintiff does not dispute that the County concluded its investigation of alleged financial waste and mismanagement at the project prior to Gibbs' appointment as department head. Plaintiff has not produced any evidence to show that defendant Gibbs was angry or displeased with plaintiff for speaking out about perceived County mismanagement at the Warren/Wabash project or that Gibbs personally suffered as a result of plaintiff's protected speech. Further, because plaintiff was not terminated until January 1994, retaliatory motive also cannot be inferred from the proximity of the protected conduct and the later adverse action.

The existence of a factual dispute as to Gibbs' characterization of plaintiff as a "disruptive" and "insubordinate" employee from the Spring of 1992 through January 20, 1994, is not probative evidence of any retaliatory motive by Gibbs based on plaintiff's speech related to the Warren/Wabash project. Defendant Gibbs is therefore immune from individual liability on plaintiff's claim that he was terminated for speaking out about alleged County waste and mismanagement on the Warren/Wabash project.

Plaintiff's November 11, 1993 memo regarding County management's failure to properly and adequately address a long-standing safety hazard at a Parker Road intersection is a closer call. Plaintiff was terminated approximately two and one half months after sending the memo to Gibbs. The court finds that the short time period between plaintiff's protected speech and his subsequent termination raises a genuine issue of material fact as to whether the November 11, 1993 memo was a motivating factor in Gibbs' decision to terminate plaintiff. *Smith v. Maschner,* 899 F.2d 940, 948–49 (10th Cir.1990) (Constitutionally-protected activity closely followed by adverse action can provide inference of retaliatory motive in § 1983 action).

The court further finds that plaintiff's right not to be discharged for speaking out about matters which warrant First Amendment protection, matters which include issues regarding the improper handling of a public safety hazard, was firmly established in January 1994 at the time he was discharged. *See Considine,* 910 F.2d at 699–700. However, because the "qualified immunity analysis requires the court to consider the operation of the rule in the context of the circumstances with which the official was confronted," *Schalk,* 906 F.2d at 499 (internal citations omitted), the court must determine whether it would have been clear to defendant Gibbs, at the time he received plaintiff's November 1993 memo, that the memo was addressed to matters of public concern rather than plaintiff's personal grievance. *Id.*

The court finds that it is clear from the content of plaintiff's November 11, 1993 memo that plaintiff's primary concern was an ongoing safety hazard at the Parker Road intersection and that his personal venting against the County was ancillary to that concern. It should therefore have been clear to Gibbs at the time he received plaintiff's memo that plaintiff was addressing a matter of public concern.

Defendant Gibbs has thus far failed to articulate any countervailing government interest under *Pickering* which would outweigh plaintiff's First Amendment rights to speak out on matters of public concern. The court therefore finds that defendant Gibbs is not entitled to qualified immunity, for summary judgment purposes, as to plaintiff's November 11, 1993 memo. *Patrick,* 953 F.2d at 1248–49 (defendant who articulates no interest to offset plaintiff's interest in speaking on matters of public concern reasonably should have known that his conduct would not survive a balancing inquiry under well-defined

contours of *Pickering* ); *Considine*, 910 F.2d at 702–703.

### b. *Liability of Grant*

■ Plaintiff contends that defendant Grant, the County road and bridge section superintendent, issued reprimands to plaintiff and misrepresented plaintiff's behavior to Gibbs which Gibbs then relied on to terminate plaintiff. Plaintiff has produced affidavits which refute Grant's representations.

As with Gibbs, the critical inquiry is whether plaintiff can show that the alleged fabrications and misrepresentations were specifically motivated by plaintiff's protected speech on either the Warren/Wabash project or the safety hazards at the Parker Road intersection.

Gibbs' affidavit states that Gibbs frequently consulted with Grant regarding plaintiff's alleged "disruptive" and "insubordinate" behavior. However, as with Gibbs, plaintiff has not produced any evidence to show that defendant Grant was angry or displeased with plaintiff for speaking out about perceived County mismanagement at the Warren/Wabash project or that Grant personally suffered as a result of plaintiff's speech. It is undisputed that Grant was personally involved in the Warren/Wabash project. Plaintiff's December 1991 communication to the BOCC regarding the project states that, in his opinion, "Mr. Grant [has] been working diligently to cover up and conceal this project at any expense." Lee Affidavit, Attachment 3. An unsupported conclusory allegation by plaintiff, without more, however, does not constitute specific evidence of retaliatory purpose sufficient to withstand a motion for summary judgment. *Lewis*, 903 F.2d at 759–760.

Further, because plaintiff was not terminated until January 1994, retaliatory motive cannot be inferred from the proximity of the protected conduct and the later adverse action. The fact that there is a factual dispute as to Grant's characterization of plaintiff as a "disruptive" and "insubordinate" employee from the Spring of 1992 through January 20, 1994 is not probative evidence of any retaliatory motive by Grant based on plaintiff's speech related to the Warren/Wabash project.

The court finds that there is no evidence that defendant Grant ever received or was informed about plaintiff's November 11, 1993 memo to Gibbs, or that Grant had knowledge of the memo prior to plaintiff's termination. Accordingly, plaintiff cannot show that the November 11, 1993 memo prompted Grant to complain to Gibbs.

Defendant Grant is entitled to qualified immunity on plaintiff's First Amendment claim.

### c. *Liability of individual commissioners*

■ It is not clear from the record whether plaintiff has sued the defendant commissioners in their individual capacities. Defendants nevertheless suggest that all the defendants should be afforded qualified immunity.

Gibbs stated that he did not consult with the individual defendant commissioners, Nicholl and Jolly, about his decision to discharge plaintiff. Gibbs Affidavit, ¶ 40. Commissioner defendants Nicholl and Jolly stated that they "did not know, did not request or order, nor [were they] consulted about the termination of plaintiff's employment." Nicholl and Jolly Affidavits, ¶ 4. The affidavits further state that the BOCC has delegated its authority to each department head to hire and fire employees in a specific department. *Id.*, ¶ 5. The County Policies and Procedures Manual, promulgated and adopted by the BOCC in October 1989, permits department heads to discharge an employee for any reason. Defendants' Ex. W, pp. 1, 41.

Plaintiff contends that the individual commissioners' involvement in his termination are based on 1985 and 1989 County resolutions. The resolutions created the position of County manager and delegated authority to the County manager to discharge employees, subject to County personnel policies and procedures and subject to concurrence with, or veto by, the BOCC. A later resolution abolished the County manager position so the commissioners could regain responsibility and control of all operations of County government. Plaintiff's Exs. H, I, J.

■ Liability attaches as a result of actions of the final policy maker. When a

reviewing body approves a subordinate's decision, its ratification of the decision would be chargeable to the municipality under § 1983, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Ware v. Unified School Dist. No. 492*, 902 F.2d 815, 819–820 (10th Cir.1990).

The fact that the defendant commissioners may have had the power to approve, veto or concur with Gibbs' decision to terminate plaintiff however is insufficient to impose *individual* liability on the defendant commissioners under § 1983. *Langley*, 987 F.2d at 1479–80.

d. *Liability of the BOCC (the County)*

■ Plaintiff's suit against the BOCC, the County's governing body, and the named commissioners in their official capacities, is a suit against the County. §§ 30–11–103 and 105, 12A C.R.S. (1986 Repl. Vol.); *Kentucky v. Graham*, 473 U.S. at 165, 105 S.Ct. 3099.

A county is a "person" subject to suit and monetary liability under § 1983. A county is liable for a single unlawful decision by one of its officials who has final policy making authority under state law. *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir.1993). A county may delegate its final policy making authority to a subordinate. *Flanagan v. Munger*, 890 F.2d 1557, 1568 (10th Cir.1989).

The commissioners allege that the BOCC delegated its authority to department heads to make hiring and firing decisions. Nicholl and Jolly Affidavits, ¶ 5. There is no evidence in the record to indicate that the delegation violates state law. *See* § 30–11–101, 12A C.R.S., *et seq.*

There are genuine issues of material fact as to whether plaintiff was terminated for exercise of his First Amendment rights, or for insubordinate, disruptive behavior, or policy infractions. If a jury were to find that Gibbs' termination of plaintiff was in retaliation for his exercise of First Amendment rights, the County would be liable for Gibbs' actions. *Pembaur, Sauers.* Accordingly, the BOCC is not entitled to summary judgment on plaintiff's First Amendment claim.

C. *Fourteenth Amendment Due Process Claim*

■ Plaintiff claims that the County's promulgation and application of discipline and discharge policies and procedures grant him a constitutionally-protected property right in continued employment with the County which the County cannot deprive him of without due process.

■ Whether plaintiff had a property interest in continued employment with the County is a question of law. *Langley v. Adams County, Colorado*, 987 F.2d 1473, 1480 (10th Cir.1993).

■ Property interests are created by state law. *Patrick v. Miller*, 953 F.2d 1240, 1244 (10th Cir.1992), citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A public employee has a property interest in his employment if state law provides him with a legitimate claim of entitlement to continued employment. *Board of Regents of State College v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A property interest may exist by virtue of mutually explicit understandings, such as an implied contract. *Adams County School Dist. No. 50 v. Dickey*, 791 P.2d 688, 694 (Colo.1990), citing *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Thornton v. Kaplan*, 937 F.Supp. 1441, 1455 (D.Colo.1996) (A property interest in continued employment exists when the employer, through the promulgation of policies and procedures, clearly places restrictions on its discretion to discharge employees at any time and for any reason).

Here, plaintiff relies on the County Policies and Procedures Manual in support of his claimed property interest in continued employment with the County.

Chapter X of the County's Policies and Procedures Manual, "Conduct and Employee Reinforcement" provides:

POLICY: Disciplinary Actions

In that the County adheres to the policy of employment at will, it reserves the right to bypass lesser disciplinary action and immediately dismiss an employee if in the County's opinion the violation, either by

itself or considering the employee's prior violation(s), warrants dismissal.

ZL

6. Dismissal—An employee may be dismissed at any time upon decision of a department head/elected official. It is not necessary to have exhausted lesser disciplinary action before a dismissal can occur. All dismissals shall be followed by an exit interview conducted by the personnel department and all dismissals shall be verified by the Personnel Director.

Defendant's Ex. M, pp. 40, 41.

Chapter XII, "Separation from Employment," provides:

*POLICY:* Dismissal

As described earlier, the County adheres to the doctrine of "employment at will" which provides that employment may be terminated at any time by either the employer or employee without cause. It is not necessary for an employee to have violated a County policy or regulation to warrant or substantiate a termination. Additionally, dismissals are not subject to the County's grievance procedure.

Defendant's Ex. M, p. 45.

The "procedures" regarding discharge do not require cause for discharge, but rather address administrative formalities such as exit interviews, verification of dismissal by the personnel director, and final leave and paycheck matters. Defendants' Ex. M, Ex. 1, p. 45.

The Introduction to the Manual states: "[T]his manual is not intended to be, nor does it constitute, a contract between the County and any of its employees." *Id.,* p. 2. Plaintiff signed statements in April 1986 and December 1989 (for the October 1989 Manual) acknowledging his understanding that the policies contained in the Manual were not contractual in nature. Defendants' Exs. K and L. The October 1989 Manual was in effect at the time of plaintiff's termination. Defendants' Ex. M, ¶ 10.

The court finds that the County's Policies and Procedures Manual does not contain any restrictions on the County's right to discharge an employee at any time, for any reason; therefore, the manual, by its express language, does not grant plaintiff a property interest in continued employment with the County.

■ Plaintiff argues, however, that the statements in the Policies and Procedures Manual are not dispositive. Plaintiff proffered affidavits from former County employees who said that despite the Manual's language, the County treated the discharge and discipline policies as mandatory.

In *Evenson v. Colo. Farm Bureau Mut. Ins. Co.,* 879 P.2d 402, 409 (1993), the Colorado Court of Appeals held that when an employee handbook provides managers discretion to employ progressive discipline and to terminate employees, and does not contain a conspicuous disclaimer, evidence that the employer treated the handbook provisions as binding creates a question of fact for the jury as to the existence of an implied employment contract.

Here, although the disclaimers contained in the Policies and Procedures Manual are arguably not conspicuous, plaintiff twice signed statements, acknowledging his understanding that the policies and procedures contained in the Manual were not contractual in nature. Further, plaintiff has not claimed that he was aware of or relied upon any official statements that the County treated the discipline and discharge procedures as mandatory, or on statements that the County did not treat its employees as employees at will.

■ An employer's purported offer of an implied contract is not effective unless communicated to the employee. *Kuta v. Joint Dist. No. 50(J),* 799 P.2d 379, 382 (Colo.1990); *Orback v. Hewlett–Packard Company,* 909 F.Supp. 804, 808 (D.Colo. 1995). When an employee is not aware of the employer's policy or contrary interpretation of that policy prior to his termination, the employee had no legitimate expectation that his "assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Kuta,* citing *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987). Without evidence of plaintiff's pretermination knowledge of the

County's practices in derogation of the manual's express discretionary procedures, plaintiff cannot show the reliance and continued employment in consideration of the County's offer necessary to form an implied contract.

Plaintiff next offers evidence of statements by the County attorney that "once a County employee, always a County employee" (Reid Affidavit, ¶ 6) and a statement by a former County manager that the County "does not treat its employees as employees at will" (Hahl Affidavit, ¶ 4). These vague assurances of "permanent" County employment are not sufficiently specific or definite so as to constitute a contractual offer by the County to plaintiff. Vague assurances cannot form the basis of an implied contract claim. *Vasey v. Martin Marietta Corporation*, 29 F.3d 1460, 1464–65 (10th Cir.1994); *Orback*, 909 F.Supp. at 808.[5] Further, plaintiff's failure to produce any evidence that the above statements were made to plaintiff or that plaintiff relied upon such statements in continuing his employment with the County precludes the court from finding the existence of either a valid contractual offer or an implied contract. *Kuta*, 799 P.2d at 382; *Orback*, 909 F.Supp. at 808.

Accordingly, the court finds that plaintiff did not have a property interest in continued employment with the County so as to implicate the protections of the Fourteenth Amendment Due Process Clause. Plaintiff's due process claim should be dismissed against all defendants.

D. *Breach of Implied Contract/Promissory Estoppel Claims*

Defendant moves for summary judgment on plaintiff's breach of implied contract and promissory estoppel claims on the ground that neither the County's Policies and Procedures Manual, nor any statements or practices by County managers, alter plaintiff's status as an at-will employee.

 Under Colorado law, an at-will employee may be able to enforce the employer's policies and procedures contained in an employment manual under alternative theories: (1) if he can show, under ordinary contract principles, that in promulgating the policies the employer was making an offer to the employee to which the employee's continued employment constituted the acceptance thereof, and consideration for, mutual compliance with the employer's policies; or (2) if he can show, under a theory of promissory estoppel, that the employer should reasonably have expected the employee to consider the promulgated policies as a commitment from the employer to follow the policies and that the employee reasonably relied on the policies to his detriment, and that injustice can only be avoided by enforcement of the policies. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711–12 (Colo.1987).

Based on the Court's findings in Section III.C. above that plaintiff has failed to show the existence of an implied employment contract between him and the County, Defendant's Motion for Summary Judgment on plaintiff's breach of implied contract claim should be granted.

 Plaintiff cannot base his promissory estoppel claim solely on the discipline and discharge policies set forth in the County Policies and Procedures Manual because the language of the policies is clearly discretionary. In addition, plaintiff executed statements acknowledging that the policies were not contractual in nature. Both facts preclude a finding that the County promulgated the policies as "a commitment from the employer to follow the policies." *Keenan*, 731 P.2d at 712. Further, because plaintiff has produced no evidence to show that he continued his employment with the County in detrimental reliance on statements of County managers or officials alleging practices contrary to the manual's provisions, or on any promises of permanent employment, his promissory estoppel claims must fail. *Kuta*, 799 P.2d at 382–383; *Vasey*, 29 F.3d at 1466.

E. *Plaintiff's Request for Discovery under Fed.R.Civ.P. 56(f)*

 Plaintiff contends that summary judgment is premature because he has not

---

**5.** In addition, an oral contract for permanent employment is not valid unless it is supported by "special consideration" beyond that derived from the employee's services. *Schur v. Storage Tech-*nology*, 878 P.2d 51, 54 (Colo.App.1994). There is no evidence of such special consideration in the instant case.

had an opportunity to conduct discovery. Plaintiff specifically supports his request with the unsigned affidavit of Fred Finley, a former County manager (Plaintiff's Ex. A, attachment 9), which states that: the County treated its personnel policies and procedures as binding (¶ 3); defendant Nicholl has stated that County employees could not be terminated without cause (*Id.*); and, all terminations required approval by the BOCC (¶ 4). Presumably, plaintiff would seek to depose Mr. Finley, if given the opportunity, to obtain these statements under oath.

The court finds, however, that the above statements, even if sworn to by Mr. Finley, would not persuade the court to alter its recommendations on Defendants' Motion for Summary Judgment. As set forth in Section III.C and III.D above, statements by former County managers or commissioners that *in 1992* the County treated its policies and procedures as binding, or that employees could not be terminated without cause, are not probative of plaintiff's § 1983 claim for violation of his Fourteenth Amendment due process rights, or his claims of breach of implied contract and promissory estoppel, unless plaintiff shows that he relied on such statements in continuing his employment. Plaintiff has not claimed that he relied on representations or statements by any County managers or commissioners.

As set forth in Section III.B.3.c above, even if the BOCC was required to approve or disprove a department head's decision to terminate an employee, the mere act of approval, without more, would not subject the defendant commissioners to individual liability under § 1983. *Langley,* 987 F.2d at 1479–80. Further, Finley's purported statement that plaintiff "could not have been terminated without the knowledge and consent of the County Commissioners" is based on his knowledge of County operations in 1992, not in 1994 when plaintiff was terminated and is therefore not persuasive.

The court therefore declines to defer making a recommendation on Defendants' Motion for Summary Judgment pending discovery of Mr. Finley.

## IV. Recommendations

For the reasons set forth above, the court finds that genuine issues of material fact exist as to plaintiff's claim against the Board of County Commissioners of Arapahoe County on plaintiff's § 1983 First Amendment retaliation claim based on plaintiff's October and December 1991 and November 11, 1993 memoranda. The court therefore recommends that Defendant's Motion for Summary Judgment against defendant BOCC be denied as to that portion of plaintiff's § 1983 claim for retaliation in violation of his First Amendment right to freedom of speech.

The court further finds that genuine issues of material fact exist as to defendant Gibbs' individual liability and entitlement to qualified immunity on plaintiff's claims of First Amendment retaliatory termination as it relates to the November 11, 1993 memorandum. The court therefore recommends that Defendants' Motion for Summary Judgment against defendant Gibbs be denied as to that portion of plaintiff's § 1983 claim for retaliation in violation of his First Amendment right to freedom of speech.

The court recommends that Defendants' Motion for Summary Judgment be granted as to the remainder of plaintiff's § 1983 First Amendment claims.

The court recommends that defendants John Nicholl, Jeannie Jolly, and James Grant be afforded qualified immunity on plaintiff's § 1983 claim for violation of his First Amendment rights and that they be dismissed from this action because suit against them in their official capacities is a suit against the County. *Kentucky v. Graham,* 473 U.S. at 165, 105 S.Ct. 3099.

The court recommends that plaintiff's § 1983 claim for violation of his Fourteenth Amendment due process rights and his state law claims for breach of implied contract and promissory estoppel be dismissed in their entirety. The court recommends that plaintiff's voluntary dismissal of his state law wrongful discharge in violation of public policy claim be adopted as an order of the court.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file**

written objections to the proposed findings and recommendation as provided by rules of court. The district court judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

March 10, 1997.